Carl Ledell PENN *v.* STATE of Arkansas

CA CR 96-1155                                   945 S.W.2d 397

Court of Appeals of Arkansas
Division IV
Opinion delivered May 28, 1997

*William R. Simpson, Jr.*, Public Defender; *Kent C. Krause*, Deputy Public Defender, by: *Jeffrey A. Weber*, for appellant.

*Winston Bryant*, Att'y Gen., by: *O. Milton Fine II*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Carl Ledell Penn was tried in a bench trial on a three-count indictment for possession of cocaine with intent to deliver, possession of drug paraphernalia, and fleeing. He moved for directed verdict on all counts at the conclusion of the State's case. The trial judge, after addressing only the drug-possession count, granted the motion for directed verdict and announced that the case was dismissed. After a recess, and after another case had been called, the trial judge advised counsel for Penn and the State that he had failed to address the drug paraphernalia and fleeing counts, denied the directed-verdict motion as to these counts, and ultimately found Penn guilty. Penn asserts on appeal that resumption of the proceedings after dismissal of the case violated his right against double jeopardy. We agree, and reverse and dismiss.

At the close of the State's evidence in his bench trial, Penn moved for a directed verdict on all three counts, articulating separate grounds for each offense. Regarding count one, possession of a controlled substance with intent to deliver, Penn argued that the State failed to prove possession, that the substance was cocaine, and that he planned to sell it. Regarding count two, possession of drug paraphernalia, Penn argued that the State failed to prove that the one-inch-square plastic ziplock baggies that were introduced into evidence were actually drug paraphernalia, because they were never analyzed for drug residue, and that the State failed to prove that he actually possessed them. Regarding count three, misdemeanor fleeing, Penn argued that the State failed to prove that he unlawfully fled from a Little Rock police officer whom he knew to be an officer and that he knew that his immediate arrest or detention was being attempted.

After listening to the State's arguments against the motion, the court stated, "I'm going to grant the motion for a directed verdict," because the State failed to prove that Penn possessed a usable amount of cocaine. The trial judge then stated, "I grant the defendant's motion. This case is dismissed." The State voiced no objections. The judge then ordered the controlled substance destroyed and declared a fifteen-minute recess.

When the judge returned after the recess, he called the next case. However, the judge later interrupted these proceedings and

asked the counsel from Penn's case to approach; he stated that he had failed to address the fleeing and drug paraphernalia charges against Penn, and told counsel that he had instructed that Penn not be transported back to the county jail and that he be brought back to the courtroom. The judge then completed the unrelated proceedings and went back on the record in Penn's case.

The judge announced that in his haste to get some aspirin for a headache, he failed to address the other two counts included in Penn's motion for a directed verdict, and that he intended to finish his response to the motion. The judge stated that, in granting the motion for the directed verdict, he had only addressed the charge of possession of cocaine with intent to deliver, and that he "misspoke" when he said the case was dismissed. The judge also noted that the dismissal had occurred less than an hour earlier.

Penn objected, citing case authority that proceeding with the trial would violate the constitutional prohibition against double jeopardy. The court, after reading the case, found it unpersuasive. Penn did not put on a case, but renewed his motion for a directed verdict. The motion was denied, and Penn was found guilty of possession of drug paraphernalia and fleeing. He later received a five-year sentence.

Penn's sole argument on appeal is that the trial court erred by finding him guilty of two counts of the information after previously dismissing the case. Penn argues that the trial judge's decision to deny a directed verdict on the drug paraphernalia and fleeing counts after he stated that the case was dismissed constituted double jeopardy. He contends that resuming the proceeding amounted to a reconsideration of an acquittal, and relies on *Sanabria v. United States*, 437 U.S. 54 (1978) (quoting *Fong Foo v. United States*, 369 U.S. 141 (1962)), as authority for the proposition that a verdict of acquittal may not be reversed without putting a defendant twice in jeopardy, even if the dismissal is "based upon an egregiously erroneous foundation." Penn also urges this court to find analogous the situation in *Brooks v. State*, 308 Ark. 660, 827 S.W.2d 119 (1992), in which the supreme court found violative of the prohibition against double jeopardy a trial judge's reversal of his grant of a directed verdict on an aggravated robbery

charge when he found that he had wrongly assumed that the State was required to prove as an element of the offense that property was actually taken.

The State urges us to accept the trial judge's explanation for what transpired, that the judge misspoke and only intended to dismiss the drug possession charge. The State contends that giving the trial court the benefit of the doubt in this instance would be consistent with this court's usual deference to the trial judge sitting as a trier of fact where, for example, we recognize the judge's superior position to determine the credibility of witnesses and presume that the judge only considers competent evidence when deciding a case. Additionally, the State contends that *Brooks v. State, supra,* is not on point, because the instant case is not one where the judge changed his mind, but is simply a situation where he had not completed his ruling on the directed-verdict motions and made an unfortunate choice of words that did not communicate his true intent. The State notes, however, that if the judge had indeed changed his mind, *Brooks* would control, and the State would have to concede error.

Although we do not agree with the State's characterization of the trial court's actions in dismissing Penn's case, we recognize that the authorities relied upon by Penn, *Sanabria v. United States, supra,* and *Brooks v. State, supra,* involved acquittals based on erroneous applications of law, and are, to this extent, distinguishable from the facts of Penn's case.

In *Sanabria,* the trial court's erroneous exclusion of evidence led him to grant the defendant's motion to acquit because of lack of evidence. The government appealed, and the First Circuit Court of Appeals vacated the judgment of acquittal and remanded for a new trial. The Supreme Court reversed the court of appeals decision, holding that an acquittal for insufficient evidence, even if based on an erroneous evidentiary ruling, barred a second trial on the same offense, stating: "[t]here is no exception permitting retrial once the defendant has been acquitted, no matter how 'egregiously erroneous,'" the legal rulings leading to that judgment might be. 437 U.S. 54, 64.

In *Brooks v. State*, the circuit judge granted the defendant's motion to dismiss a robbery charge, based on his misunderstanding that aggravated robbery required an actual theft of property, and later tried to correct his error by reinstating the case and submitting it to the jury. The supreme court reversed the robbery conviction holding that the trial court's granting of the motion to dismiss constituted a judgment of acquittal, and that submission of the robbery charge to the jury constituted double jeopardy. 308 Ark. at 667-68, 827 S.W.2d at 123.

Clearly, the trial court's dismissal of Penn's case was not based upon an erroneous evidentiary ruling or a mistake of law. We have further been unable to find a case from this or any other jurisdiction which involves an acquittal under circumstances similar to the facts of this case. However, it is clear from the trial court's statements and the ensuing events that Penn's case was indeed dismissed, albeit erroneously, pursuant to Penn's motion for directed verdict, and that the trial court attempted to correct the error by reopening the case after Penn had been removed from the courtroom, and the court had moved on to the next case.

■ The finality of a verdict of acquittal is the most fundamental aspect of double jeopardy jurisprudence. *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977). That verdict need not be unequivocal on every issue to operate against the State. As the Supreme Court stated in *United States v. Jenkins*, "Here there was a judgment discharging the defendant, although we cannot say with assurance whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause." 420 U.S. 358, 369-70 (1975).

Penn was tried and then acquitted when the trial court made its pronouncement, "Case dismissed." Further proceedings could not and did not comport with the Constitution. Consequently, we hold that the Double Jeopardy Clause requires reversal of Penn's convictions for possession of drug paraphernalia and fleeing.

Reversed and dismissed.

GRIFFEN and CRABTREE, JJ., agree.